| | |
|---|---|
| DISTRICT COURT, MESA COUNTY, COLORADO<br>125 North Spruce Street<br>Grand Junction, Colorado 81505-7341 | **EFILED Document**<br>**CO Mesa County District Court 21st JD**<br>**Filing Date: Aug 27 2008  4:57PM MDT**<br>**Filing ID: 21264815**<br>**Review Clerk: Annie L Alarid** |
| Plaintiff:     Rachel Luchaco<br><br>v.<br><br>Defendant:   Colorado State Patrol | ▲     **COURT USE ONLY**     ▲ |
| J. Keith Killian                                          No. 9042<br>Damon J. Davis                                        No. 34323<br>Nicholas W. Mayle                                  No. 38252<br>Killian, Jensen & Davis, P.C.<br>202 North Seventh Street<br>Post Office Box 4859<br>Grand Junction, Colorado 81502<br>Telephone:                               (970) 241-0707<br>Attys. for Plaintiff:     Rachel Luchaco | Case No.<br><br>Div. |
| **COMPLAINT** | |

Plaintiff, Rachel Luchaco ("Luchaco"), through her attorneys, Killian, Jensen & Davis, P.C., submits this Complaint and states as follows:

## JURISDICTION AND VENUE

1. Luchaco is a resident of Rio Blanco County, Colorado.

2. The Colorado State Patrol ("CSP") is an agency of the State of Colorado.

3. Jurisdiction in the state of Colorado is proper pursuant to section 13-1-124, C.R.S.

4. Venue is proper pursuant to C.R.C.P. 98(c)(1).

5. On July 8, 2006, Luchaco filed a Charge of Discrimination with the Colorado Civil Rights Division, charge number 541-2006-00287.

6. Luchaco's Charge of Discrimination was presented to the Equal Employment Opportunity Commission.

7. On May 30, 2008, the Equal Employment Opportunity Commission issued Luchaco a Notice of Right to Sue.

8. Luchaco has exhausted her administrative remedies.

9. Pursuant to 42 U.S.C. §2000e(b), the CSP is an employer engaged in an industry affecting commerce who had more than fifteen (15) employees at all times relevant hereto.

10. Luchaco's claims for relief arise out of Title VII o f the Civil Rights Acts of 1964 and 1991, 42 U.S.C. 2000e, *et seq.* State courts have concurrent jurisdiction with federal district courts over the federal question claims. *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed. 2d 887 (1990).

## **GENERAL ALLEGATIONS**

11. Plaintiff incorporates by reference each and every paragraph of this Complaint.

### Training

12. Luchaco began her employment with the CSP in January of 2005 in the position of State Patrol Intern at the CSP Training Academy in Cadet Class 2005-01.

13. Upon completion of twenty-three weeks of Academy training, Luchaco became a peace officer in the CSP by meeting the requirements for certification by the Colorado Peace Officer Standards and Training ("P.O.S.T.") Board.

14. Upon graduation from the Training Academy, and becoming P.O.S.T certified, Luchaco was sworn in as a CSP Trooper.

15. Luchaco's first assignment was to CSP Troop 4B, which covers the highways in rural northwest Colorado near the towns of Craig and Meeker.

16. Once at her assigned station, on June 20, 2005, Luchaco entered into a Field Training Officer (FTO) program, as is required of all newly appointed troopers.

17. Luchaco's Field Training Supervisor, Gary Kendall, gave her high marks for her performance during FTO training.

18. In August of 2005, Luchaco was able to complete her FTO training within eight weeks, instead of the ten weeks normally required of troopers.

### October 14, 2005 Incident

19. Immediately upon beginning her regular assignment with CSP Troop 4B, Luchaco's supervisors, Captain Williams and Sergeant Meirose, subjected Luchaco to harassment and disparate treatment because of her gender.

2

20. Luchaco's investigative reports were reviewed and scrutinized more intensely than the reports of other newly trained male troopers.

21. Sergeant Meirose frequently rejected Luchaco's reports and forced her to redo them simply to change semantics. An example of this occurred on October 14, 2005 when during the fourteenth hour of her shift, Luchaco was called into Sergeant Meirose's office in Craig to be reprimanded for stating in an investigative report that a deer was "thrown" when struck by vehicle rather than "traveling" after being struck by a vehicle. Sergeant Meirose reprimanded Luchaco for four hours over this single matter, extending her shift to eighteen hours that day.

22. Subsequently, Luchaco researched the reports of other male troopers and discovered that others, such as Troopers Baughman and Kendall, had also used the word "thrown" in reference to deer being struck by vehicles. These male officers did not receive reprimands for their use of the word "thrown."

23. Sgt. Meirose frequently required that Luchaco travel from the field or from her station in Meeker to his station in Craig to pick up his changes to Luchaco's reports. Other male Troopers were not subjected to this treatment.

### November 7, 2005 Incident

24. On November 7, 2005, Luchaco was investigating an accident scene involving two government vehicles in Craig when Captain Williams ordered her via radio dispatch to respond to an accident scene in Rangely.

25. Luchaco complied with this order and while en route to Rangely, dispatch informed her that she was no longer required to respond to the Rangely accident as the Rio Blanco County Sheriffs department was already on scene.

26. Luchaco asked radio dispatch whether Captain Williams had given this order to stand down. The dispatcher responded in the affirmative.

27. At the conclusion of Luchaco's shift, Captain Williams ordered Luchaco to meet with him. During this meeting, Captain Williams chastised Luchaco for not responding to the Rangely accident scene, even though he had told dispatch to inform Luchaco that the Rio Blanco County Sheriffs Department would investigate the accident.

28. Although it is illogical that Captain Williams would chastise Luchaco for actually complying with his order, these types of harassing meetings were used by Captain Williams and Sergeant Meirose to create a hostile work environment for Luchaco and to build a fabricated record against her.

29. During this meeting with Captain Williams, he also informed her that unspecified members of the Rio Blanco County Sheriff's Department and the Meeker Police Department were complaining about Luchaco's attitude. Luchaco inquired as to who these individuals were,

3

but Captain Williams threatened that he would conduct an unrelated formal fact-finding investigation against Luchaco if she pursued the matter.

### Rifle Training Course Incident

30. Luchaco requested to attend a rifle training course.

31. The day before the course was set to begin, Sergeant Meirose informed Luchaco that she would not be permitted to attend the rifle training course.

32. The CSP told Luchaco that she would not be permitted to attend because her rifle had not been previously inspected in Denver and there was insufficient time before the course began to have the rifle inspected in Denver.

33. Luchaco inquired if she could use the previously Denver inspected rifle assigned to the Meeker CSP station since it was not in use. This request was denied by Sergeant Meirose.

34. Luchaco subsequently learned that a male coworker was permitted to attend the rifle training course and was permitted to use the Denver inspected rifle assigned to the Rangely CSP station.

### Attempt to File a Grievance

35. On December 2, 2005, Luchaco requested a meeting with Captain Williams in order to initiate the grievance process for the working conditions she was enduring.

36. In response to this request, Captain Williams stated, "Major King says you have nothing to grieve. In fact, since you want to push the issue, I [Captain Williams] will give you something to grieve."

37. In an act of retaliation during the December 2, 2005 meeting, Captain Williams then scheduled a fact-finding investigation for the following Tuesday.

38. Luchaco then contacted Heather Purdue in the Denver office of the Colorado Department of Personnel and Administration. Luchaco explained how she attempted to file a grievance, but was denied and that a formal fact finding meeting was being held as a punitive measure.

39. Ms. Purdue then referred Luchaco to the Denver office of the Human Resources Section of the State Patrol. When Luchaco contacted the Human Resources Section of the State Patrol, they simply informed her that she would have to attend the fact-finding meeting scheduled by Captain Williams or be considered insubordinate.

40. Luchaco attended the fact-finding meeting, during which Captain Williams told her that there is no way that she could become a standard Trooper by her next scheduled performance review.

4

41.     Becoming a standard Trooper would have resulted in a pay increase for Luchaco and the opportunity for earlier promotion.

## Constructive Discharge

42.     The working conditions at the CSP became intolerable for Luchaco.

43.     Luchaco realized that her superiors, Captain Williams and Sergeant Meirsose, were discriminating against her and had created a hostile work environment in order to force her to resign from the CSP or to build a record of her "performance issues" in order to terminate her later.

44.     On December 9, 2005, Luchaco realized that she was being constructively discharged and tendered her resignation to Captain Williams to be effective December 23, 2005.

45.     On December 9, 2005, Sergeant Meirose directed Luchaco to work on finishing any outstanding matters. Luchaco worked for twelve hours on December 9, 2005.

46.     Later on December 9, 2005, Captain Williams called Luchaco into his office and advised her that her "resignation" would be effective immediately and that this meeting would serve as her exit interview.

47.     Under CSP policy, Luchaco's exit interview should have taken place with Major King and not her immediate supervisor.

48.     On December 9, 2005, Captain William told Luchaco that she would be ineligible for rehire.

49.     As shown in CSP records, Luchaco is ineligible for rehire by the CSP.

50.     Captain Wiliams' decision to make Luchaco ineligible for rehire has adversely affected Luchaco's ability to obtain gainful employment with the state of Colorado, other law enforcement agencies, and other government entities in the future.

51.     Upon Luchaco's constructive discharge on December 9, 2005, Captain Williams took Luchaco's badge, firearm, and duty belt. He then told Luchaco that she was forbidden from being on CSP property and told Luchaco to leave the "state's" office.

52.     On December 9, 2005, Captain Williams forced Luchaco to wait for a ride in the public lobby without her badge, firearm, or duty belt. There were many county trustee prisoners in the public lobby.

53.     Captain Williams forced Luchaco to wait in the lobby as an act of intimidation and humiliation in front of her peers and those over which she once held a public position.

5

54. Subsequent to Luchaco's constructive discharge, Sergeant Meirose came to Luchaco's home. He stated that that purpose of his trip was to inventory Luchaco's belongings to ensure she had not wrongfully retained any CSP property. This was also an act of retaliation.

55. As an act of retaliation, the CSP improperly failed to pay 184.41 hours of wages in Luchaco's final paycheck.

56. This failure to pay Luchaco the 184.41 hours she was owed resulted from Captain Williams intentionally failing to report to the CSP the correct amount of hours Luchaco was owed.

57. Luchaco attempted to collect payment for the 184.41 hours of unpaid wages for over one-year.  The CSP finally admitted its failure to correctly pay Luchaco this amount in a letter from CSP director, Marshall R. Norman, dated December 14, **2006.**

58. As an act of retaliation, the CSP also demanded and continues to demand that Luchaco reimburse the CSP $9,000 for her training.

**FIRST CLAIM FOR RELIEF**
**GENDER DISCRIMINATION IN EMPLOYMENT**
**42 U.S.C. 2000e-2**
**Devitt, Blackmar & Wolff,**
**Federal Jury Practice and Instructions, §§ 104.03 and 04**
*Burlington Indus. Inc., v. Ellerth*, **524 U.S. 742, 118 S.Ct. 2257** (**1998**)
*Faragher v. City of Boca Raton*, **524 U.S. 775, 118 S.Ct. 2275** (**1998**)

59. Plaintiff incorporates by reference each and every paragraph of this Complaint.

60. Luchaco satisfactorily performed her job duties through her employment with the CSP.

61. The CSP discriminated against Luchaco with respect to her compensation, promotion, terms, conditions, and privileges of her employment because of her gender.

62. The CSP's gender discrimination against Luchaco resulted in Luchaco suffering an adverse, tangible employment action.

63. The CSP intentionally discriminated against Luchaco in that sex was a motivating factor in the CSP's decision to discriminate against Luchaco in her employment.

64. The CSP's intentional discrimination against Luchaco was a cause of her injuries, damages, and losses.

**SECOND CLAIM FOR RELIEF**
**HARASSMENT**
**42 U.S.C. 2000e-2**

6

*Burlington Indus. Inc., v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998)
*Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998)

65.	Plaintiff incorporates by reference each and every paragraph of this Complaint.

66.	The CSP subjected Luchaco to disparate and abusive treatment because of her gender.

67.	Luchaco was subject to reprimands, disciplinary action, intimidation, and false accusations because of her gender.

68.	The CSP subjected Luchaco to harassing conduct on a daily basis.

69.	The conduct to which Luchaco was subjected was unwelcome.

70.	The conduct to which Luchaco was subjected was offensive.

71.	The conduct to which Luchaco was subjected was sufficiently severe and pervasive as to alter the conditions of Luchaco's employment and create an abusive and hostile work environment.

72.	Luchaco perceived the working environment at the CSP to be abusive and hostile.

73.	A reasonable woman in Luchaco's circumstances would consider the working conditions to be abusive and hostile.

74.	The CSP knew or should have known of the harassing conduct to which Luchaco was subjected and failed to respond in a reasonable manner.

75.	Luchaco suffered injuries, damages, and losses as a result of the harassing conduct to which the CSP subjected her.

### THIRD CLAIM FOR RELIEF
### RETALIATION
### 42 U.S.C. 2000e-3
*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)

76.	Plaintiff incorporates by reference each and every paragraph of this Complaint.

77.	Luchaco opposed the gender discrimination and harassment to which the CSP subjected her.

78.	Luchaco made this opposition known to the CSP.

79.	Luchaco attempted to initiate the grievance process within the CSP for the gender discrimination and harassment to which the CSP subjected her.

80. The CSP refused to allow Luchaco to initiate a grievance process within the CSP.

81. Luchaco's opposition to the CSP's gender discrimination and her attempt to initiate a grievance process is an activity protected under federal law.

82. The CSP retaliated against Luchaco because of her opposition to the CSP's gender discrimination and her attempt to initiate a grievance process.

83. The CSP's retaliation is an adverse employment action and consisted of: (1) further harassment; (2) being denied the opportunity to become a standard trooper; (3) constructive discharge; (4) being made ineligible for rehire; (4) making her constructive discharge effective immediately; (5) being denied an appropriate exit interview; (6) prematurely taking her badge, firearm, and duty belt; (6) being made suffer the humility of being made to wait in the lobby of the CSP office with many County Prisoners present; (7) inventorying her belongings at her home without warning; (8) failing to pay her 184.41 hours of pay; and (8) demanding that she reimburse the CSP $9,000.00 for her training.

84. Luchaco suffered injuries, damages, and losses as a result of the CSP's retaliation.

### **FOURTH CLAIM FOR RELIEF**
### **CONSTRUCTIVE DISCHARGE**
### **42 U.S.C. 2000e**

85. Plaintiff incorporates by reference each and every paragraph of this Complaint.

86. Luchaco was employed with the CSP beginning in January of 2005.

87. Luchaco satisfactorily performed her job duties at the CSP.

88. Because of the gender discrimination and harassment to which Luchaco was subjected, the working conditions at the CSP became intolerable.

89. Because the working conditions at the CSP became intolerable, a reasonable person in Luchaco's position would have felt compelled to resign.

90. The CSP constructively discharged Luchaco because of her gender.

91. The CSP intentionally discriminated against Luchaco in that Luchaco's gender was a motivating factor in the CSP's constructive discharge of Luchaco.

92. The CSP's constructive discharge of Luchaco caused her to suffer injuries, damages, and losses.

### **DAMAGES**

8

### BACK PAY DAMAGES

93. Plaintiff incorporates by reference each and every paragraph of this Complaint.

94. The CSP's intentional discrimination and retaliation in violation of federal law entitles Luchaco to an award of back pay and interest she would have been entitled to had she continued as an employee of the CSP until the last date of trial.

### REINSTATEMENT OR FRONT PAY DAMAGES

95. Plaintiff incorporates by reference each and every paragraph of this Complaint.

96. The CSP's intentional discrimination and retaliation in violation of federal law entitles Luchaco to an award of reinstatement or damages for front pay.

97. The evidence will indicate that reinstatement would be inappropriate due to the hostile work environment created by the CSP's intentional discrimination and retaliation and, therefore, Luchaco would be entitled to payment for their future loss of earnings (front pay).

### COMPENSATORY DAMAGES

98. Plaintiff incorporates by reference each and every paragraph of this Complaint.

99. The CSP's intentional discrimination and retaliation in violation of federal law entitles Luchaco to an award of damages for back pay, future pecuniary losses, emotional pain and suffering, inconvenience, and mental anguish.

### PUNITIVE DAMAGES

100. Plaintiff incorporates by reference each and every paragraph of this Complaint.

101. The CSP engaged in discriminatory practice or practices by intentionally discriminating and retaliating against Luchaco in violation of federal law with malice or reckless indifference to the rights of Luchaco to be free from such intentional discrimination and retaliation.

102. Luchaco is entitled to punitive damages to punish the CSP for its misconduct and to warn others against doing the same.

### ATTORNEYS' FEES AND COSTS
### 42 U.S.C. § 1988 (TITLE VII)
### 42 U.S.C. 2000e

103. Plaintiff incorporates by reference each and every paragraph of this Complaint.

104.	42 U.S.C. § 1988(b) states, in part: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs."

105.	Luchaco incurred a reasonable attorneys' fee and costs in pursuing this action in an administrative agency and will continue to incur reasonable attorney fees and costs in this civil action.

106.	Luchaco's reasonable attorney fees and costs have been and will be incurred as a result of defendant's violation of the Civil Rights Act of 1991, specifically, gender discrimination.

## **INJUNCTIVE RELIEF**
**42 U.S.C. § 2000e-5(g)**

107.	Plaintiff incorporates by reference each and every paragraph of this Complaint.

108.	Upon Luchaco's constructive discharge from the CSP, the CSP made Luchaco ineligible for rehire. This adversely affects Luchaco's ability to obtain future employment with the State of Colorado, other law enforcement agencies, and other government entities.

109.	The CSP making Luchaco ineligible for rehire constitutes an unlawful act of intentional discrimination and retaliation.

110.	Luchaco is entitled to injunctive relief in the form of a cease and desist order, removal of the "ineligible for rehire status" from her employment file with the CSP, and such other injunctive relief the court deems appropriate.


WHEREFORE, Plaintiff respectfully requests:

   A.	Judgment to be entered against the Colorado State Patrol for monetary damages in an amount to be proven at trial;

   B.	Reasonable attorneys' fees;

   C.	Costs of litigation, including expert witness fees;

   D.	Pre-judgment and post-judgment interest;

   E.	Exemplary/punitive damages;

   F.	Injunctive Relief in the form of removal of the ineligible for rehire status from her employment file with the CSP; and

10

  G.  Such other and further relief as the court deems just and proper.

  DATED this 27th day of August 2008.

             KILLIAN, JENSEN & DAVIS, P.C.

             Original Signature on File.

             */s/ J. Keith Killian*
             J. Keith Killian    No. 9042
             Damon J. Davis    No. 34323
             Nicholas W.  Mayle  No. 38252
             Attorneys for Plaintiff

Plaintiff's Address:
71818 Highway 64
Meeker, CO 81641