IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 08-cv-02348-LTB-KMT

RACHEL LUCHACO,

        Plaintiff,

v.

COLORADO STATE PATROL,

        Defendant.

_____

ORDER
_____

This matter is before me on a Motion for Summary Judgment [**Doc # 81**] filed by

Defendant, Colorado State Patrol ("CSP"), in which it seeks judgment in its favor and dismissal

of the claims alleged against it by Plaintiff, Rachel Luchaco. Oral arguments would not

materially assist me in the determination of this motion. After consideration of the parties' briefs

and exhibits, I GRANT IN PART and DENY IN PART the motion for the following reasons.

## I. BACKGROUND

This case involves Plaintiff's claims of gender discrimination against CSP, her former

employer. In January 2005, Plaintiff began six-months of training at the CSP Training

Academy. After Plaintiff graduated as a level 1 accident investigator, she was assigned to the

duty station in Meeker, which is within Troop 4B and located in the Craig area of Northwest

Colorado. Sergeant Gary Meirose was Plaintiff's direct supervisor, Captain Brett Williams was

Sgt. Meirose's immediate supervisor and Plaintiff's second level supervisor, and Major Michael

King was Capt. Williams' supervisor.

After graduation, Plaintiff completed two months of on-the-job training in the Field Training Officer program. Sgt. Meirose went on a "check ride" with Plaintiff and certified her as a "full trooper" at the end of August 2005. At that point Plaintiff began responding to and investigating accidents as a CSP Trooper.

A couple of months later, in October 2005, Sgt. Meirose met with Plaintiff to discuss her accident reports. During this four hour meeting, Sgt. Meirose returned several of Plaintiff's reports for correction. The tenor of this meeting is disputed – CSP asserts that Sgt. Meirose was counseling Plaintiff, while she contends that he berated her for errors that often were only a matter of semantics or writing style. Plaintiff requested overtime for this meeting – which she asserts prolonged her 14 hour shift by 4 hours – but that request was denied. Instead, Plaintiff was told she would receive compensation time, which Plaintiff contends she did not receive.

At some point during this time Plaintiff asked to take a rifle training course, after which a trooper was certified to carry a rifle. Her request was denied and Sgt. Meirose decided that Trooper Todd Low, who worked by himself out of the Rangely duty station, could take the class.

On November 7, 2005, dispatch ordered Plaintiff to respond to an accident near Rangely. At the time she received the call, Plaintiff was on scene at an accident within Meeker. Plaintiff did not respond until 25 minutes later. After she received the order to respond, dispatch then called her off the response. Capt. Williams subsequently called a meeting with her regarding the accident, over the radio, after the end of Plaintiff's shift. The following day, November 8, 2005, Plaintiff applied for a job with the Meeker Police Department. In her application, Plaintiff stated that her reason for leaving CSP was the schedule. In a letter to the Meeker town council, also dated November 8, 2005, Plaintiff also listed quality of life issues as her reason for leaving CSP.

On November 22, 2005, Sgt. Meirose met with Plaintiff to discuss the findings of an audit comparing Plaintiff's trooper workbook to dispatch records – for the work period of September 5, 2005 through October 1, 2005 – which revealed errors in Plaintiff's accident reports and discrepancies in her time reporting. Plaintiff asserts that the first half of the meeting, which was not tape-recorded, Sgt. Meirose belittled her, accused her of profiling, and used an aggressive tone. She further asserts that following a break, Sgt. Meirose's tone and attitude changed after he turned on the tape recorder.

On the audio-taped portion of the meeting, Sgt. Meirose discussed Plaintiff's old reports that were not completed, and indicated that he had not received a new accident report from her for the previous three weeks. He also expressed concern about the 12 reports he had returned to Plaintiff a month earlier, which had not yet been corrected. Sgt. Meirose indicated that he personally received four calls the previous month from people looking for Plaintiff's accident reports. Sgt. Meirose also told Plaintiff that her workbook and dispatch records were inconsistent, and that she was also using unknown codes and terminology. Sgt Meirose concluded that if she did not improve, Plaintiff could be placed on a performance improvement plan.

On December 2, 2005, Plaintiff requested a meeting with Capt. Williams. CSP maintains that the purpose of the meeting was for Plaintiff to grieve her November 22nd performance review with Sgt. Meirose. Capt. Williams denied her request on the basis that neither the audit, nor any of Sgt. Meirose's actions in returning accident reports to her for correction, were grieveable under the State Personnel Board System. Plaintiff maintains, however, that she was attempting to "grieve both [Capt.] Williams and [Sgt.] Meirose, as well as to discuss my adverse

working conditions, including the hostile workplace toward females, my total on-call and the vast area I was required to patrol." At that meeting Capt. Williams gave Plaintiff a direct order to complete all of her overdue reports by the end of the week. CSP asserts that Plaintiff did not do so, while Plaintiff contends that she complied with the order to complete and turn in all overdue accident reports. It is undisputed that at the conclusion of this meeting Plaintiff told Capt. Williams that she thought she was being harassed.

On December 6, 2005, Capt. Williams and Sgt. Meirose had another meeting with Plaintiff. During this meeting, which was tape recorded, Sgt. Meirose issued Plaintiff a performance improvement plan. Capt. Williams then issued Plaintiff a corrective action based on: CSP general order number 2 which required Plaintiff to obey all lawful orders and directions; CSP general order number 3 which required Plaintiff to be truthful and complete in her accounts; and CSP general order number 7 which required Plaintiff will conduct herself to reflect the highest degree of professionalism, and ensure that all people are treated with fairness, courtesy and respect. Capt. Williams also explained that Plaintiff was to work days out of the Craig office so that they could provide closer supervision to Plaintiff. Plaintiff maintains that a schedule of days in Craig and on-call nights in Meeker "would have proved impossible" and that "[n]o other trooper in Troop 4B worked days in one town and was on call in another town."

Three days later, at her next shift on December 9, 2005, Plaintiff submitted her resignation in which she stated that she had another job at Meeker Police Department. In her letter of resignation, Plaintiff gave two weeks notice. Later that morning Plaintiff met with Capt. Williams. During that conversation, which was again tape-recorded, Capt. Williams informed Plaintiff that her resignation would be effective that day and he asked her to turn in her ID card,

weapon and badge. When Plaintiff asked whether she would be eligible for rehire, Capt. Williams indicated that his recommendation to Major King was going to be that she would not be eligible for rehire. After Plaintiff asked whether she would have a meeting with anyone else, Capt. Williams responded that Maj. King had delegated her exit interview to him. Plaintiff then stated that Capt. Williams had made her life "miserable," but did not elaborate further.

Plaintiff asserts that after Capt. Williams turned off the tape recorder, his "tone changed completely" and he yelled and told her to get out of his office and that she was no longer a law enforcement officer. He then called dispatch and indicated that Plaintiff was no longer allowed in the building or on CSP property. Plaintiff further contends that after this meeting she was purposely humiliated by being forced waited in the public lobby for Sgt. Meirose to drive her home.

Plaintiff was not paid the full amount of separation pay owed to her in December 2005. After she complained, CSP ultimately acknowledged the underpayment in December 2006 and she received the amount she was owed in January of 2007.

After receiving her right-to-sue letter from the EEOC on May 30, 2008, Plaintiff filed this lawsuit in state court on August 28, 2008. In her complaint Plaintiff asserts claims for: Gender Discrimination; Harassment; Retaliation; and Constructive Discharge. CSP subsequently had this matter removed to this court, pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

## II. SUMMARY JUDGMENT STANDARD

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary

judgment is appropriate if the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, I examine the factual record in the light most favorable to the party opposing summary judgment, extending to that party all reasonable factual inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

If the movant carries its burden of showing the absence of a genuine issue of material fact, the non-movant must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mares v. ConAgra Poultry Co., Inc*., 971 F.2d 492, 494 (10th Cir. 1992). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

### III.  FIRST CLAIM FOR RELIEF: GENDER DISCRIMINATION

In her first claim for relief, Plaintiff seeks damages for gender discrimination, pursuant to 28 U.S.C. § 2000e-2 (Title VII), in that she asserts CSP unlawfully discriminated against her with respect to the compensation, promotion, terms, conditions and privileges of her employment because of her gender.  Plaintiff's gender discrimination claim is grounded in disparate treatment.

A.  Exhaustion of Administrative Remedies

As an initial matter, I first address CSP's argument that Plaintiff's gender discrimination claim is barred because she has failed to exhaust her administrative remedies.

A plaintiff must exhaust his or her administrative remedies, such as filing a charge with the EEOC, before bringing suit under Title VII. *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1409

(10th Cir. 1997). Thus, a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter. *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services,* 165 F.3d 1321, 1326 (10th Cir. 1999). Requiring exhaustion of administrative remedies "serves to put an employer on notice of a violation prior to the commencement of judicial proceedings [which] in turn serves to facilitate internal resolution of the issue rather than promoting costly and time-consuming litigation." *Martinez v. Potter,* 347 F.3d 1208, 1211 (10th Cir. 2003). The failure to file an administrative Title VII claim before bringing suit is jurisdictionally fatal and requires dismissal. *Shikles v. Sprint/United Mgmt. Co.,* 426 F.3d 1304, 1317 (10th Cir. 2005); *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 799 (10th Cir. 1997).

Under Title VII, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify [and e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002). As a result, each incident of discriminatory treatment constitutes its own separate "unlawful employment practice" for which administrative remedies must be exhausted. *Martinez v. Potter, supra,* 347 F.3d at 1210 -1211 (*adopting Nat'l R.R. Passenger Corp. v. Morgan, supra*).

CSP contends that Plaintiff has asserted nine acts or incidents of gender discrimination in this lawsuit that she did not raise in her EEOC charge. However, in her response to this motion, Plaintiff asserts only four employment actions in support of her claim of gender discrimination. Specifically, that she was treated differently than the male troopers because she was: 1) subjected to excessive berating from her supervisors; 2) denied the opportunity to become rifle

trained; 3) made ineligible for rehire; and 4) required to work days in Craig, while still being on call at night in Meeker. Plaintiff maintains that she informed the EEOC of each of these alleged unlawful employment practices – with the exception of the requirement that she work days in the Craig office, while continuing to work on-call at night in Meeker – in her initial charge dated July 8, 2006, or in related correspondence with the EEOC. This correspondence consists of a copy of a letter she sent to Major James Wolfinbarger at CSP in March of 2006, that she forwarded to the EEOC on May 23, 2006, prior to her filing her formal charge on July 8, 2006. In addition, Plaintiff relies upon a letter sent by her attorney to the EEOC – dated August 17, 2007, after she filed her charge – in rebuttal to CSP's response to the charge. Plaintiff maintains that these two documents serve as additional charges or, alternatively, that they constitute amendments to the initial EEOC charge.

I first address Plaintiff's reliance on the letter she sent to Major Wolfinbarger at CSP, on March 11, 2006, in which she disputes that she owes the CSP Training Academy the cost of training her and outlines her complaints about her working conditions at CSP. Plaintiff apparently sent a copy of this letter to the EEOC, via facsimile, on May 23, 2006, prior to the filing of her formal charge on July 8, 2006. Plaintiff argues that this letter constitutes a separate EEOC charge or, alternatively, is an amendment to her formal charge.

Title VII provides the EEOC with broad discretion to determine the information necessary in a charge. Specifically, it provides only that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C.A. § 2000e-5(b); *see also* 29 C.F.R. § 1601.12(b)(which requires only "a written statement sufficiently precise to identify the parties, and to describe generally the action

or practices complained of").  The Supreme Court has held, in the context of an ADEA claim, that a document constitutes a charge if it:  (I) provides the minimum information the regulations require, and (ii) can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee."  *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008); *see also Semsroth v. City of Wichita*, 304 Fed.Appx. 707, 712-713 (10th Cir. 2008)(not selected for publication) (applying to Title VII).   I assess whether a filing constitutes a request for remedial action from an objective viewpoint.  *Id.* (*citing Federal Express v. Holowecki, supra*, 552 U.S. at  402).

The copy of Plaintiff's March 2006 letter she sent to Major Wolfinbarger at CSP – and then forwarded with no other information to the EEOC – cannot be interpreted as an EEOC charge.  First and foremost, it is not a writing "under oath or affirmation" as required by 42 U.S.C.A. § 2000e-5(b).  Furthermore, it cannot be objectively or reasonably "construed as a request for the agency to take remedial action . . . or otherwise settle a dispute between the employer and employee."  *Federal Express  v. Holowecki, supra*, 552 U.S. at  402. The forwarded letter relates only factual information and makes no requests of the EEOC.  *See Semsroth v. City of Wichita, supra*, 304 Fed.Appx. at 214 (rejecting a plaintiff's EEOC intake questionnaire as a charge when there was no evidence that she requested that the EEOC take action after filing it).

In addition, I also reject Plaintiff's argument to the extent she asserts that the March 2006 letter she sent to Major Wolfinbarger at CSP constitutes an amendment to her formal charge.  An amendment may "clarify or amplify allegations" that support claims made in the original charge, but is not permitted to raise new theories of recovery.  *Simms v. Oklahoma, supra*, 165 F.3d at

1326; 29 C.F.R. § 1601.12(b).  Plaintiff sent her March 2006 letter to the EEOC on May 23, 2006 – almost two months before she filed her formal charge with the EEOC.  The charge does not refer to or in any way relate back to Plaintiff's March 2006 letter.  Therefore, I conclude that the March 2006 letter Plaintiff sent to Major Wolfinbarger at CSP does not constitute either a new EEOC charge or an amendment to her formal EEOC charge.

However, I further find that the letter sent to the EEOC from Plaintiff's attorney on August 17, 2007 –  that serves to rebut CSP's response to Plaintiff's formal EEOC charge dated July 8, 2006 –  does constitute an amendment in that it clearly serves to clarify the allegations made in the formal charge, and does not attempt to raise new theories of recovery.  *See Simms v. Oklahoma, supra*, 165 F.3d at 1326.  Thus, I review both Plaintiff's formal EEOC charge and her attorney's letter to assess whether Plaintiff sufficiently exhausted her administrative remedies as to the specific unlawful employment practices alleged here in support of her claim for gender discrimination.

I first address Plaintiff's assertion that she was subjected to excessive berating from her supervisors, while male troopers were not.  I find that the various allegations of mistreatment by her supervisors – such as her assertions regarding the extensive reprimands related to her accident reports, the alleged inaccurate allegations related to her failure to respond to accident scenes, and the abrupt denials she received when attempting to file internal grievances – are sufficient to raise this alleged act of discrimination with the EEOC.  *See Jones v. United Parcel Service, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)(courts are required to "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim").  In addition, as to Plaintiff's claim that she was

denied the opportunity to become rifle trained, this alleged adverse employment action was clearly alleged in both her charge (as a example of being subjected to unequal terms of employment, she alleges that "I was not allowed to attend a rifle training class, where a male trooper was") and then further expanded upon in the letter from her attorney as an amendment to the charge. Thus, as to both allegations of being excessively berated and not being allowed to attend rifle training, Plaintiff has exhausted her remedies as to these two specific allegations related to her claim of gender discrimination.

However, my review of the charge and the amending letter thereto does not reveal an allegation that Plaintiff was subject to the adverse employment action of being deemed ineligible for rehire upon the termination of her employ with CSP. In addition, Plaintiff concedes that her various submissions with the EEOC failed to assert that she was discriminated against because she was required to work days in Craig, while still being on call at night in Meeker. As a result, I agree with CSP that Plaintiff has failed to exhaust her administrative remedies as to her specific assertions that she was subjected to gender discrimination because she was deemed ineligible for rehire and was required to work days in Craig, while still being on call at night in Meeker. *See Martinez v. Potter, supra,* 347 F.3d at 1210 -1211 (requiring that each incident of discriminatory treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted).

B. Plaintiff's *Prima Facie* Case

I next address CSP's argument that Plaintiff's claim for gender discrimination must be dismissed because she has failed to make out her *prima facie* case. When, as here, a plaintiff has not presented any direct evidence of her claims of discrimination under Title VII, courts are to

11

employ the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Thus, in order to survive summary judgment, a plaintiff must first establish a *prima facie* case of gender discrimination, which requires proof that he or she: 1) belongs to a protected class; 2) suffered an adverse employment action; 3) was qualified for the positions at issue, and 4) was treated less favorably than others not in the protected class. *See Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1238 (10th Cir. 2002). CSP maintains that Plaintiff cannot make out her *prima facie* case in that she cannot demonstrate that 1) she suffered an adverse employment action; or 2) that she was treated less favorably than similarly situated male employees.

In cases of discrimination based on gender, adverse employment actions are tangible "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, *supra*, 480 F.3d at 1203 (*quoting Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004)). "[A] mere inconvenience or an alteration of job responsibilities" does not constitute an adverse employment action. *Id. (quoting Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 532 (10th Cir. 1998)). Since Title VII is a remedial statute, courts should "employ[ ] a liberal definition of adverse employment action and [apply] a case-by-case approach." *Abuan v. Level 3 Communications, Inc.,* 353 F.3d 1158, 1174 (10th Cir. 2003).

As an initial matter, I first address Plaintiff's assertion that the requirement that she work days in Craig, while on call at night in Meeker, constituted an adverse employment action and thus should be considered here as "background information." However, as discussed above, Plaintiff has failed to exhaust her administrative remedies with regard to this specific alleged

unlawful employment practice. As a result, her allegation related to Craig/Meeker schedule, as well as her assertion that she was discriminated against when she was deemed ineligible for rehire, cannot be considered as a basis for making out her *prima facie* case for gender discrimination.

I next address Plaintiff's assertion that she was discriminated against because she was subjected to excessive berating from her supervisors, over relatively minor transgressions, while male troopers were not subject to such treatment. In support this claim, Plaintiff contends that the oral reprimands by Capt. Williams and Sgt. Meirose – as well as her related performance improvement plan and corrective action letter – constitute an adverse employment action. In response, CSP argues that Plaintiff's supervisors' attempts to address her inadequate accident reports was not a adverse employment action in that it did not result in a tangible change in employment status.

First, I agree with CSP that the performance improvement plan and corrective action do not alone constitute adverse employment actions in that they did not materially effect Plaintiff's job status. *See Haynes v. Level 3 Communications, LLC,* 456 F.3d 1215, 1224 (10th Cir. 2006); *Rennard v. Woodworker's Supply, Inc.,* 101 Fed.Appx. 296 (2004)(not selected for publication). In so doing, I reject Plaintiff's unsupported argument that her performance improvement plan undermined her position or that it affected the likelihood that she would be terminated. Placement on a performance improvement plan that outlines a plan for corrective action, but does not include a change in employment status, as here, does not constitute an adverse employment action. *Mirzai v. State of New Mexico General Services Dept.,* 506 F.Supp.2d 767, 785 (D.N.M. 2007)(a corrective action plan "is designed as a rehabilitative tool aimed to assist

[an employee] improve his work performance and to place him on notice of [the employer's] concerns"). Although the performance plan indicated that failure to improve could result in suspension and/or termination, it had no "immediate or practical effect on her job status." *Rennard v. Woodworker's Supply, supra,* 101 Fed.Appx. at 307.

In addition, I likewise conclude that the oral reprimands by Plaintiff's supervisors – even when characterized as "excessive berating" – do not rise to the level of an adverse employment action. A reprimand "will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment." *Medina v. Income Support Div., State of N.M.,* 413 F.3d 1131, 1137 (10th Cir. 2005). Additionally, "[u]nsubstantiated oral reprimands and unnecessary derogatory comments . . . are not included within the definition of adverse [employment] action absent evidence that they had some impact on the employees employment status." *Sanchez v. Denver Pub. Sch., supra,* 164 F.3d at 533; *see also Mirzai v. State of New Mexico, supra,* 506 F.Supp.2d at 784-85 (ruling that demeaning or allegedly disagreeable treatment does not constitute an adverse employment action). In *Sanchez v. Denver Public Schools*, *supra*, the Tenth Circuit concluded that while a supervisor's alleged disagreeable conduct was certainly distressful, such conduct "did not significantly affect her employment status and therefore did not constitute adverse employment action," and "not everything that makes an employee unhappy qualifies" as an adverse employment action." *Id.* (*quoting Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3d Cir.1997)); *see also Mirzai v. State of New Mexico, supra,* 506 F.Supp.2d at 785-86. Thus, I conclude that Plaintiff assertion that she was subjected to excessive berating from her supervisors does not constitute an adverse employment action.

Plaintiff also maintains that she was denied the opportunity to become rifle trained, and instead a male trooper was allowed to attend the training. CSP admits that Plaintiff was not provided this training opportunity, while another male trooper was, but argues that such action is not an adverse employment action. Because the rifle training and certification does not impact a trooper's pay or job duties, or opportunity to be promoted or transferred – either officially or unofficially – CSP maintains that the training does not render a tangible job benefit and, as such, is not a materially adverse employment action. I agree.

While Plaintiff asserts generally that a rifle certification would be "valuable when being evaluated for supervisory positions" and the training would have been beneficial personal safety reasons, she offers no evidentiary basis linking such training to any prerequisite to any promotion, work assignment or other employment status. *See Belgasem v. Water Pik Technologies, Inc*., 457 F.Supp.2d 1205, 1215 (D.Colo. 2006)(ruling that the absence of evidence linking a training denial to a lack of promotion results in the inability to show the plaintiff suffered an adverse job action); *see also Brenna v. Salazar*, 2010 WL 582357, 14 (D.Colo. 2010)(not selected for publication). The fact that a certification would have been "valuable" to Plaintiff, does not make CSP's denial an employment action that was materially adverse to the terms and conditions of her employment. I reject Plaintiff' unsubstantiated claim that the lack of rifle training kept her "stagnated" and was tantamount to a transfer to a less prestigious position. Plaintiff has failed to demonstrate how the denial of rifle training materially affected the terms or conditions of her employment and, as such, she cannot prove it constituted an adverse employment action.

Thus, because she is unable to demonstrate that she was subjected to an adverse

employment action in support of her claim, Plaintiff has failed to met her burden to make out a *prima facie* case of gender discrimination under *McDonnell Douglas Corp. v. Green*, *supra*. As a result, CSP is entitled to summary judgment on Plaintiff's Title VII disparate treatment claim of gender discrimination.

## IV. SECOND CLAIM FOR RELIEF: HOSTILE WORK ENVIRONMENT

In her second claim for relief, Plaintiff seeks damages for gender harassment, pursuant to Title VII, that she contends was sufficiently severe and pervasive as to have altered the conditions of her employment and created an abusive and hostile work environment. In order to survive summary judgment on this claim, a plaintiff must show that a rational jury could find that his or her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005).

A. Exhaustion of Administrative Remedies

As an initial matter, CSP again argues that Plaintiff's harassment claim is barred because she has failed to exhaust her administrative remedies. Specifically, CSP maintains that Plaintiff has not exhausted her administrative remedies as to her hostile work environment claim since it is not referenced or mentioned in her charge of discrimination.

In her charge, Plaintiff alleged that "[b]eginning on/about October 14, 2005, and continuing, I was subjected to harassment and unequal terms and conditions of employment." She asserts that she was "forced to resign . . . due to retaliation and intolerable working conditions." In support of her claim, Plaintiff makes the following specific allegations of

mistreatment due to her gender: that unlike the male troopers, her accident reports were subject to heightened scrutiny and reprimand; that she was not allowed to attend a rifle training class, while a male co-worker was; that she treated differently than male troopers "concerning similar disposition of traffic accidents;" that she was given a poor performance evaluation and improvement plan; that she attempted to file an internal grievance "due to my working conditions" but was informed that she could not pursue a grievance; that her resignation was accepted effective immediately, while other male troopers were allowed to finish a two-week notice period, and that she was not justly compensated following her resignation.

CSP contends that these factual allegations do not assert a claim of gender harassment sufficient to put them on notice of her hostile work environment claim. I agree. Although she asserts generally that she was harassed, her factual allegations do not assert an abusive and hostile work environment in that they do not allege any discriminatory intimidation, ridicule, or insult. In addition, my review of the correspondence from Plaintiff's attorney – which I have determined served to amend Plaintiff's EEOC charge – likewise alleges a hostile work environment generally, but does not allege any specific factual allegations of gender harassment in the form of intimidation, ridicule or insult based on gender. Rather, the EEOC charge and the related correspondence characterizes Plaintiff's work environment as hostile based on the alleged disparate treatment. As a result, I conclude that Plaintiff's EEOC charge fails to give reasonable notice that she was alleging a hostile environment claim based on gender discrimination. *See Carrero v. Arapahoe County Sheriffs Office,* 2006 WL 2594472 (D. Colo. 2006)(not selected for publication)(ruling that although a supplement to the EEOC charge made two mentions of "hostile work environment," it failed to actually allege any instances of

discriminatory intimidation, ridicule, or insult; rather it used the expression in a "colloquial sense," referring to the plaintiff's perception that his employer was hostile towards the plaintiff); *see also Bronakowski v. Boulder Valley School Dist.*, 549 F.Supp.2d 1269, 1279 (D. Colo. 2008)(ruling that the plaintiff failed to raise a hostile work environment claim in his EEOC charge when he alleged that the discrimination took place on a single date, and where there was no mention of a hostile work environment claim or evidence of when the alleged acts creating a hostile work environment occurred). As a result, Plaintiff's claim of a hostile work environment based on gender discrimination has not been administratively exhausted.

B. Plaintiff's Case

However, even if Plaintiff did adequately exhaust her remedies, I also conclude that CSP is entitled to summary judgment on Plaintiff's claim, because the acts of harassment alleged by Plaintiff – even if true – are not sufficiently severe or pervasive to create an objectively hostile work environment as a matter of law.

To survive summary judgment on a claim alleging a hostile work environment based on gender, a plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that the plaintiff "was targeted for harassment because of her gender . . . ". *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326-27 (10th Cir. 2004)(*citing Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998)). Determining whether an actionable hostile work environment claim exists requires an examination of "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan, supra*, 536 U.S. at 116 (quotations omitted). "In making this determination, we consider the work atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a reasonable person in the plaintiff's position." *Tademy v. Union Pacific Corp.,* 520 F.3d 1149, 1161 (10th Cir. 2008)(citations omitted). Thus, when reviewing a hostile environment claim on summary judgment, courts must look to the totality of the circumstances. *Penry v. Federal Home Loan Bank, supra,* 155 F.3d at 1262 (citations omitted).

In her response to this motion, Plaintiff refers to me to the following evidence that her workplace at CSP was permeated with discriminatory intimidation, ridicule and insult. First, she asserts that she was subject to excessive berating for minor transgressions – which included "innuendo of other unsubstantiated misconduct" – which she contends was frequent, severe, humiliating, and unreasonably interfered with her performance as a trooper. She also contends that her attempts to address the berating were met with intimidation and veiled threats. While actionable conduct is not limited to conduct that is overtly sexual or behavior motivated by sexual desire, a plaintiff must produce evidence that she was the object of harassment because of her gender. *Penry v. Federal Home Loan Bank, supra,* 155 F.3d at 1261.

In support of her argument that this treatment was because of her gender, Plaintiff refers to improper discriminatory comments regarding women from her male co-workers or supervisors. First, she alleges in her affidavit that Trooper Roger Kendall told Plaintiff that he found an accident victim on her back "the way that women like it." She also alleges that in an email dated December 14, 2005, Major Michael King (Capt. Williams' supervisor) stated that

"every women I can remember who failed with our department tries to blame all of their shortcomings and lack of commitment onto every man that work with and for." [sic].

However, assuming this evidence to be true and viewing it in the light most favorable to Plaintiff, I cannot conclude that such incidents of discriminatory intimidation, ridicule or insult could, under the totality of the circumstances, support a factual finding that Plaintiff's working environment was "permeated" with abuse sufficient for a jury to find a hostile work environment based on gender harassment. *See Herrera v. Lufkin Indus.*, 474 F.3d 675, 680 (10th Cir. 2007)(ruling that "[a] plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs [. . .i]nstead, there must be a steady barrage of opprobrious racial comments"). As such, I conclude that Plaintiff's allegations do not raise a genuine issue of material fact as to a consistently offensive environment, based on gender, in order to survive summary judgment on her hostile work environment claim.

## V. THIRD CLAIM FOR RELIEF: RETALIATION

In her third claim for relief, Plaintiff asserts and seeks damages for CSP's alleged Title VII retaliation against her. Under 42 U.S.C. § 2000e-3(a), retaliation against an employee because he or she has opposed any practice made unlawful by Title VII is prohibited. Where there is no direct evidence of retaliation, as is the case here, I again analyze the claim under the *McDonnell Douglas* burden-shifting framework. *See Stover v. Martinez,* 382 F.3d 1064, 1070 -1071 (10th Cir. 2004)(*citing Jeffries v. State of Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998)). To satisfy a plaintiff's *prima facie* burden on a claim of retaliation for having exercised rights pursuant to Title VII, he or she must show that: 1) the plaintiff engaged in protected opposition

to discrimination; 2) the employer subsequently took action that a reasonable employee would have found materially adverse; and 3) there is a causal connection between the plaintiff's protected activity and the adverse action. *Campbell v. Gambro Healthcare, Inc*., 478 F.3d 1282, 1287 (10th Cir. 2007); *Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193, 1202 (10th Cir. 2006).

CSP does not dispute that Plaintiff engaged in protected opposition to discrimination. Rather, CSP rests its motion on its contention that Plaintiff cannot make out her *prima facie* case in that she cannot demonstrate that 1) she suffered a materially adverse employment action; or 2) that a causal connection exists between the protected activity and any adverse action.

A.  Materially Adverse Employment Action

CSP first argues that Plaintiff's retaliation claim must fail because she was not subjected to a materially adverse employment action.  A plaintiff's requirement to demonstrate that his or her employer took an adverse employment action against them, when making out a claim of retaliation, differs significantly from the standard applied in a gender discrimination claim.  In *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 72 (2006), the Supreme Court ruled that in a retaliation claim, a plaintiff is required to show "that a reasonable employee would have found the challenged action materially adverse."  *Id.* at 67-68; *see also Somoza v. University of Denver,* 513 F.3d 1206, 1212 (10th Cir. 2008); *E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790 (10th Cir. 2007).  Thus, in a retaliation claim under Title VII, whether a reasonable employee would have found it materially adverse means that such action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. " *Id.* at 60.

In applying this standard, I must consider the context of the alleged action as "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Somoza v. University of Denver, supra,* 513 F.3d at 1213 (*quoting Burlington Northern & Santa Fe Ry. v. White, supra,* 548 U.S. at 69). In addition, the test for determining whether an action would have been considered material is an objective test, asking how a reasonable employee would have interpreted or responded to the action. *Williams v. W.D. Sports, N.M., Inc,* 497 F.3d 1079, 1088-89 (10th Cir. 2007).

Plaintiff asserts several adverse employment actions against her by CSP in retaliation for her assertion to Capt. Williams, during their meeting on December 2, 2005, that she felt she was being harassed. First, Plaintiff claims that on December 6, 2005, four days following her complaint, Capt. Williams issued to her a "nonstandard" correction action. CSP argues that the "nonstandard correction action" did not constitute an adverse employment action because it is undisputed that the corrective action was, in fact, correctly issued; specifically, that is was procedurally standard, accurate, and not disciplinary in nature. Conversely, Plaintiff argues that the corrective action constituted a formal reprimand, to be placed in her permanent file, which would potentially affect her ability to be promoted. She also asserts that it was "nonstandard" in that she did not get the requisite hearing related to the action.

While the circumstances surrounding the corrective action are disputed, I conclude that a reasonable employee could have found this action materially adverse. Even if the corrective action was correctly issued to Plaintiff, it still constitutes a materially adverse employment action in that a reasonable employee might certainly be dissuaded or from making or supporting a

charge of discrimination following such act by an employer.  *See e.g. Ram v. New Mexico Dept. of Environment*, 2007 WL 5239192, 36 (D.N.M. 2007)(not selected for publication)(ruling that written warnings and letters of reprimand were materially adverse in retaliation claims).

Plaintiff also asserts materially adverse employment actions that she alleges occurred at the time of her resignation on December 9, 2005.  Plaintiff first asserts that the "exit procedures" following the termination of employment, after she submitted her letter of resignation, were nonstandard.  Specifically, she asserts that she did not get a proper exit interview, she was not given the opportunity to rescind her resignation, and she was humiliated by being forced to wait in a public area for a ride home.  CSP argues that the actions complained of were not materially adverse in that it again disputes the accuracy of the allegations.

However, Plaintiff  provides sufficient evidence of these assertions, and that they meet the standard of a material adverse actions in a retaliation context.  The actions complained of, particularly in the context of this claim, are not "trivial harms, such as personality conflicts or snubbing by coworkers and supervisors," nor are they "petty slights, minor annoyances, and simple lack of good manners."   I conclude that a reasonable employee could find that the employment actions Plaintiff complains she was subjected to produced harm that, in turn, would deter continued complaints by reasonable victims of discrimination.  *Burlington Northern & Santa Fe Ry. v. White, supra*, 548 U.S. at 68.

Accordingly, I conclude that Plaintiff has raised issues of fact related to whether she was subjected to materially adverse employment actions following her complaint of harassment and in support of her claim of retaliation.

B.  Causal Connection

CSP also argues that Plaintiff cannot establish a *prima facie* case of retaliation because she cannot prove a causal connection between her complaint and the adverse employment actions.  A causal connection may be established by proffering "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1320 (10th Cir. 1999); *see also Annett v. University of Kansas,* 371 F.3d 1233, 1240-41 (10th Cir. 2004).

The materially adverse employment actions alleged by Plaintiff came within days of her making her complaint.  CSP concedes that there is clearly temporal proximity between Plaintiff's complaint and the alleged adverse actions.   CSP argues, however, that because it had been counseling Plaintiff about her performance problems for the two months prior to the time of her allegations, she is unable to demonstrate that there is a causal connection between her protected activity and the alleged retaliation.

CSP does not refer me to any legal authority for this proposition.  Moreover, I disagree that because the parties had commenced discussing Plaintiff's performance prior to her complaint, the retaliatory nature of the employment actions that followed directly thereafter is somehow negated.  The case law is clear that temporal proximity is sufficient to demonstrate causation for the purpose of justifying an inference of retaliatory motive.  *See Annett v. University of Kansas, supra,* 371 F.3d at 1241 (*citing Ramirez v. Oklahoma Dep't. of Mental Health*, 41 F.3d 584, 596 (10th  Cir. 1994); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).  Accordingly, CSP is not entitled to summary judgment on the basis that Plaintiff has made out her *prima facie* case on her Title VII claim for retaliation.

## VI. FOURTH CLAIM FOR RELIEF: CONSTRUCTIVE DISCHARGE

In her last claim for relief, Plaintiff asserts that she was constructively discharged from her position by CSP in violation of Title VII. In order to make a *prima facie* claim for constructive discharge, a plaintiff must establish: 1) that she is a member of the class protected by the statute; 2) that she was qualified for her job; 3) that despite her qualifications, she was discharged; and 4) the job was not eliminated after her discharge. *See Sandoval v. City of Boulder, supra,* 388 F.3d at 1325 (*citing Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000)). CSP asserts that it is entitled to judgment on Plaintiff's constructive discharge claim because there is no evidence that she was discharged.

A constructive discharge occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit. *Tran v. Trustees of State Colleges in Colorado,* 355 F.3d 1263, 1270 (10th Cir. 2004) (citations omitted). In applying this objective test, the question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions. *Id.* A constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable. *Id.* When a plaintiff has resigned from his or her position, the plaintiff "must raise a genuine issue of material fact about whether he [or she] was constructively discharged to survive summary judgment on his Title VII claim." *Baca v. Sklar,* 398 F.3d 1210, 1217 (10th Cir. 2005).

I note, as a initial matter, that Plaintiff alleged a constructive discharge claim in her EEOC charge when she asserted that she was forced to resign from her position as a trooper "due

to the retaliation and intolerable working conditions." However, when reviewing the evidence Plaintiff asserts in support of this claim, my consideration is limited to the specific unlawful employment practices adequately raised therein. For example, as discussed above, Plaintiff failed to raise her allegations related to the requirement that she work in Craig, while being on call at night in Meeker, as well as the decision that she be deemed ineligible for rehire. As such, I do not consider the alleged unlawful employment practices that Plaintiff did not assert in her EEOC charge, and subsequent amendment letter, as she has failed to exhaust her administrative remedies as to these allegations. *See generally Martinez v. Potter, supra,* 347 F.3d at 1210 11; *Boykin v. Snow,* 344 F.Supp.2d 1299, 1305 (D. Utah 2004).

Plaintiff points to the following evidence in support of her claim that CSP made her working conditions so intolerable and difficult that a reasonable person in her position would feel compelled to resign. First, Plaintiff refers to evidence that she was subject to excessive berating, that she felt she was subject to gender discrimination, and that she was denied rifle training. She also relies on the fact that her resignation was made effective immediately and she was not allowed to serve her two weeks notice, nor was she properly compensated at the time of her resignation. Finally, she argues here she intended to make CSP a life-long career, and that she took a significant pay cut when she took the job at the Meeker Police Department.

However, it is undisputed that Plaintiff voluntarily, without being asked or threatened, submitted her letter of resignation to CSP on December 9, 2005, and that at the time of her resignation Plaintiff had another job at Meeker Police Department. She had applied for the position with Meeker Police prior to most of the oral and written reprimands that constitute her allegation of "excessive berating," and a month before she complained of harassment based on

her gender. In her Meeker Police application, Plaintiff indicated that her reason for leaving CSP was the schedule and, in a related letter to the Meeker town council, Plaintiff also listed quality of life issues as her reason for leaving.

While there is some evidence that it was Plaintiff's subjective belief that her working conditions were so intolerable that she felt compelled to resign, I am to apply an objective standard. *See Sandoval v. City of Boulder, supra,* 388 F.3d at 1325 (noting that when determining whether a constructive discharge occurred, "[t]he conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant") (*quoting Sanchez v. Denver Public Schools, supra,* 164 F.3d at 534). When examining a constructive discharge claim, I must disregard both the employee's subjective view of the workplace environment and the employer's subjective intentions regarding the employee. *Baca v. Sklar, supra,* 398 F.3d at 1216.

When viewing the evidence and inferences therein in favor of Plaintiff, I conclude that Plaintiff has failed to raise a genuine issue of material fact as to whether a reasonable person would have viewed her working conditions as so intolerable, that she had no other choice but to quit and, therefore, felt "compelled to resign." *Baca v. Sklar, supra,* 398 F.3d at 1218 (*quoting Yearous v. Niobrara County Memorial Hosp.,* 128 F.3d 1351, 1356 (10th Cir. 1997)). Because Plaintiff has failed to make her *prima facie* case requirement that she was discharged, CSP is entitled to summary judgment in its favor on her claim of constructive discharge.


ACCORDINGLY, I GRANT IN PART and DENY IN PART CSP's Motion for Summary Judgment [**Doc #81**], as follows:

1)  The motion is GRANTED in that CSP is entitled to summary judgment on Plaintiff's First Claim for Relief seeking damages for Gender Discrimination, based on a theory of disparate treatment under Title VII;

2)  The motion is GRANTED in that CSP is entitled to summary judgment on Plaintiff's Second Claim for Relief  seeking damages for Harassment/Hostile Work Environment; under Title VII;

3) The motion is DENIED in that CSP is not entitled to summary judgment on Plaintiff's Third Claim for Relief  seeking damages for Retaliation under Title VII; and

4) The motion is GRANTED in that CSP is entitled to summary judgment on Plaintiff's Fourth Claim for Relief seeking damages for Constructive Discharge, under Title VII.


Dated: August __30__, 2010, in Denver, Colorado.


BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE